**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

------------------------------------------------------------ x

AXEL DIEGELMANN,                                    :
    Matschils 19, 9495                          :
    Triesen, Liechtenstein,                      :
                                                          :

FRITZ DIEGELMANN,                                   :    Case No. 24-CV-1090
    Matschils 19, 9495                          :
    Triesen, Liechtenstein,                      :
                                                          :    **COMPLAINT FOR**
RHEINGOLD EDELMETALL AG,              :    **DECLARATORY AND**
    Schliessa 16, 9495                          :    **INJUNCTIVE RELIEF**
    Triesen, Liechtenstein,                      :
                                                          :

RHEINGOLD EDELMETALL GMBH,         :
    Schliessa 16, 9495                          :
    Triesen, Liechtenstein,                      :
                                                          :

        and                                       :
                                                          :

LIEMETA AG,                                           :
    Schliessa 16, 9495                          :
    Triesen, Liechtenstein,                      :
                                                          :

        Plaintiffs,                              :
                                                          :

    - against -                                        :
                                                          :

JANET YELLEN,                                        :
    in her official capacity as                  :
    Secretary of the United States          :
    Department of the Treasury              :
    1500 Pennsylvania Ave., NW            :
    Washington, D.C. 20220                    :
                                                          :

THE UNITED STATES DEPARTMENT OF   :
THE TREASURY,                                      :
    1500 Pennsylvania Ave., NW            :
    Washington, D.C. 20220                    :
                                                          :

BRADLEY SMITH,                                          :
      in his official capacity as                    :
      Director of the                               :
      United States Department of the Treasury      :
      Office of Foreign Assets Control              :
      1500 Pennsylvania Ave., NW-Annex              :
      Washington, D.C. 20220                        :
                                                    :
            and                               :
                                                    :
THE UNITED STATES DEPARTMENT                           :
OF THE TREASURY, OFFICE OF FOREIGN                     :
ASSETS CONTROL,                                        :
      1500 Pennsylvania Ave., NW-Annex              :
      Washington, D.C. 20220                        :
                                                    :
            Defendants.                       :
------------------------------------------------------------- x

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Axel Diegelmann ("A. Diegelmann") and Fritz Diegelmann ("F. Diegelmann") (together, the "Diegelmanns"), Rheingold Edelmetall AG, Rheingold Edelmetall GmbH, and Liemeta AG, (all entities collectively, "Diegelmann Entities," and together with A. Diegelmann and F. Diegelmann, "Plaintiffs"), by counsel, bring this Complaint against Defendants, the Secretary of the Treasury Janet Yellen of the U.S. Department of Treasury, the United States Department of the Treasury ("Treasury"), the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Director, Bradley Smith (collectively, the "Defendants"), and in support of their Complaint allege:

## NATURE OF THE CASE

1.      This lawsuit arises from the Defendants' unlawful designation of Plaintiffs to OFAC's List of Specially Designated Nationals and Blocked Persons (the "SDN List") which exceeded Defendants' legal authority, purportedly under the authority of Executive Order (E.O.) 14024 (April 15, 2021), and for which there is no credible evidence.

2.      On February 23, 2024, OFAC announced through a press release ("OFAC's Press Release") that it had designated Plaintiffs for "operating in the metals and mining sector of the Russian Federation economy."  OFAC's Press Release makes unsubstantiated, broad allegations against Plaintiffs, which are false and inadequate as a matter of law to sustain the designations of Plaintiffs.

3.      In response to Russia's aggression against Ukraine, President Joseph R. Biden declared a national security emergency and invoked the powers delegated to the President by Congress in the International Emergency Economic Powers Act ("IEEPA") to impose sweeping sanctions on Russian individuals and entities. The stated purpose of these sanctions was to put economic pressure on Russia to withdraw its forces from Ukraine. The power delegated under IEEPA generally gives implementing authority to OFAC, which in turn designates the specific individuals and entities to be sanctioned. Since February 2022, Defendant OFAC and the State Department have collectively designated over 4,000 entities and individuals pursuant to Russia related sanction authorities.

4.      Plaintiffs first learned of the designations through the media following Defendant OFAC's publication of its Press Release, which contains only conclusory allegations that lacked a factual basis and credible evidence to support them.  In fact, many of the allegations demonstrate a stunning ignorance of the industry and business that Plaintiffs are engaged in.

5.      Moreover, Defendants' allegations appear to conflate two separate concepts – sectoral sanctions on one hand and derivative sanctions on the other – to achieve a result that is impermissible under the Russian Harmful Foreign Activities Sanctions.  Specifically, E.O. 14024 authorizes the Treasury Secretary to designate people and entities based on their involvement in certain sectors of the Russian Federation economy, but Defendant OFAC has been very clear that not all participants in those sectors are deemed blocked.  *See* OFAC FAQ 1127.  Rather, operating

in a sanctioned sector exposes an entity to designation, but unless and until Defendant OFAC specifically designates an entity for operating within the sanctioned sector, the entity is not blocked. *Id*.

6. Separately, E.O. 14024 authorizes designation to the SDN List for providing material assistance to sanctioned individuals and entities. However, E.O. 14024 does not authorize designation based on material assistance to non-sanctioned entities operating in a sanctioned sector.

7. Plaintiffs were designated on February 23, 2024. In the corresponding press release, Defendant OFAC boasted that it was "sanctioning almost 300 individuals and entities […] the largest number of sanctions imposed since Russia's full-scale invasion of Ukraine." This was not the first time Defendant OFAC made specific mention of the number of people and entities it was sanctioning, touting its effectiveness by focusing on the quantity of those sanctioned rather than the quality of the evidence to support the designations.

8. Plaintiffs were accused in OFAC's Press Release of having "collaborated with Russia-based metals companies to disguise the origin of Russian precious metals," for having "assisted Russian clients to launder funds by buying and selling precious metals for cash, illicitly circumventing international sanctions," and for taking "steps to obfuscate the ownership of Russian clients and the beneficiaries of these transactions." Additionally, OFAC alleged that Bernd Diegelmann (Bernd) was "a UAE-based employee of Rheingold Edelmetall AG, [who] arranged the sale of Russian precious stones in the UAE." None of these allegations are true, as discussed in further detail below.

9. On March 13, 2024, Plaintiffs, through counsel and in an attempt to understand the basis for OFAC's allegations, demanded that Defendant OFAC produce the administrative record purporting to substantiate Plaintiffs' designations. Defendant OFAC acknowledged receipt of the request on March 14, 2024, but it has not substantively responded. On April 16, 2024, Plaintiffs,

by counsel, submitted petitions for removal from the SDN List through the administrative reconsideration process pursuant to 31 C.F.R. § 501.807.

10.     Despite historic cooperation with U.S. allies, which includes reciprocal sanctions, no other nation in the world has sanctioned Plaintiffs. Notably, this includes Ukraine itself, which has sanctioned thousands of individuals and entities since the Russian invasion, but not Plaintiffs.

11.     Beyond the lack of evidence to support Defendants' vague and conclusory allegations, Defendants exceeded their legal authority in designating Plaintiffs to the SDN List. Here, Plaintiffs have been designated for "operating in the metals and mining sector of the Russian Federation economy" when, in fact, even Defendants' own allegations do not allege conduct that would fall within the statutory and regulatory definition of that term or Defendant OFAC's own interpretation of the regulations.  Specifically, the statutory definition of "operating in the metals and mining sector of the Russian Federation economy" includes "any act, process, or industry of extracting, at the surface or underground, ores, coal, precious stones, or any other minerals or geological materials in the Russian Federation, or any act of procuring, processing, manufacturing, or refining such geological materials, or transporting them to, from, or within the Russian Federation." *See* OFAC FAQ 1115.  As stated by OFAC, this is the definition the agency "used to define the same term in the Ukraine/Russia-related Sanctions Regulations (see 31 CFR 589.325)." *Id*.

12.     In this Complaint, Plaintiffs assert three claims. First, in designating Plaintiffs, OFAC exceeded the powers extended by E.O. 14024.  Second, in exceeding their statutory authority, Defendants' designation of Plaintiff to the SDN List is therefore, arbitrary, capricious, and constitutes an abuse of discretion. Third, Defendants' imposition of sanctions on Plaintiffs failed to identify any credible evidence, and is therefore, arbitrary, capricious, and constitutes an abuse of discretion.

13.     The unlawful designations of Plaintiffs to the SDN List by Defendants have the effect of (i) unilaterally blocking, or freezing, any property or interests in property of Plaintiffs that are in the United States or in the possession or control of U.S. persons, and (ii) unilaterally prohibiting U.S. persons from engaging in transactions with any of them.

14.     Defendant OFAC's administrative reconsideration process, however, cannot address Defendants' unlawful actions purportedly under the authority of E.O. 14024.  These unlawful designations have caused, and unless set aside and/or enjoined will continue to cause, irreparable harm and damage to Plaintiffs' reputations, endanger the survival of their businesses, deprive them of their rights to access and enjoy their property, and place their clients, none of whom are sanctioned in the U.S., at risk of harm.

## JURISDICTION AND VENUE

15.     This action arises under the U.S. Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq., and the Administrative Procedure Act, 5 U.S.C. §§ 555 and 701 et seq.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

16.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57.  This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

17.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the Complaint occurred and in which Defendants reside.  *See* 28 U.S.C. §§ 1391(b) and (e).

## PARTIES

18.     Plaintiff Axel Diegelmann is a citizen of Germany and a resident of Lichtenstein. He is the owner of Rheingold Edelmetall AG, Rheingold Edelmetall GmbH, and Liemeta AG.  On

February 23, 2024, A. Diegelmann was sanctioned by OFAC and added to its SDN List for allegedly operating or having operated in the metals and mining sector of the Russian Federation economy and for being or having been a leader, an official, a senior executive officer, or member of the board of directors of Rheingold Edelmetall AG.

19.    Plaintiff Fritz Diegelmann is a citizen of Germany and a resident of Lichtenstein. He is an employee of Rheingold Edelmetall AG and Liemeta AG and does not have an ownership interest in either company.  On February 23, 2024, F. Diegelmann was sanctioned by OFAC and added to its SDN List for allegedly operating or having operated in the metals and mining sector of the Russian Federation economy and for being or having been a leader, an official, a senior executive officer, or a member of the board of directors of Rheingold Edelmetall AG.

20.    Plaintiff Rheingold Edelmetall AG is a Liechtenstein-based precious metals investment firm owned and directed by A. Diegelmann.  The company handles precious metals trading and also offers services to customers to store such metals, along with other assets, at a secure vault owned and operated by affiliate entities also owned by A. Diegelmann. Rheingold Edelmetall AG was designated pursuant to E.O. 14024 for allegedly operating or having operated in the metals and mining sector of the Russian Federation economy.

21.    Plaintiff Rheingold Edelmetall GmbH is a wholly owned subsidiary of Rheingold Edelmetall AG.  On February 23, 2024, Rheingold Edelmetall GmbH was designated pursuant to E.O. 14024 on the sole basis that it is owned or controlled by Rheingold Edelmetall AG.

22.    Plaintiff Liemeta AG is a Liechtenstein-based precious metals investment firm and storage company owned by A. Diegelmann.  On February 23, 2024, Liemeta AG was designated pursuant to E.O. 14024 on the sole basis that it is owned or controlled by A. Diegelmann.

23.    Defendant Janet Yellen is the Secretary of the Treasury of the United States. Ms. Yellen is sued in her official capacity.

24.     Defendant the U.S. Department of the Treasury is a cabinet-level governmental department, led by the Secretary of the Treasury. In addition to its core objective of promoting economic prosperity and ensuring the financial security of the United States, it implements and administers economic sanctions against foreign threats to the United States. It is located at 1500 Pennsylvania Ave., NW, Washington, D.C. 20220.

25.     Defendant Bradley Smith is the Director of OFAC. Mr. Smith is being sued in his official capacity.

26.     Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington, D.C. 20220. OFAC is responsible for administering U.S. economic sanctions programs, including issuing regulations pursuant to the laws and Executive Orders authorizing economic sanctions actions. OFAC is also the agency responsible for designating persons as SDNs and enforcing U.S. sanctions. OFAC's sanctions responsibilities include designations and implementation under E.O. 14024.

## STATEMENT OF FACTS AND ALLEGATIONS

27.     On February 23, 2024, OFAC announced through a press release ("OFAC's Press Release") that it had designated Plaintiffs pursuant to E.O. 14024 for allegedly operating in the metals and mining sector of the Russian Federation economy.

### Background of Plaintiffs' Businesses

28.     Plaintiffs have operated in the precious metals industry for over a decade.  Their business focuses on the trading of precious metals, including the acquisition and sourcing of such metals, as well as their sale.  A separate line of business involves the storage of precious metals in secure facilities. Plaintiffs do not have any capacity or resources to process or refine any precious

metals.  Further, Plaintiffs have no capacity to transport precious metals across borders, and all such transportation of precious metals is handled by third parties.

29.     Plaintiff A. Diegelmann operates the Diegelmann Entities using a number of companies based in Germany, Liechtenstein, and Hong Kong, each with generally distinct functions, all of which are owned upstream by Plaintiff A. Diegelmann.  As companies operating in Liechtenstein and Germany, the businesses operate in a fully regulated industry, which requires, *inter alia*, robust sanctions screening, anti-money laundering protocols and periodic financial auditing.

30.     Over the years, Plaintiffs have developed a reputation as reliable and upstanding players in the precious metals trading and storage sector.  Until their designation onto the SDN List, Plaintiffs were never subject to any regulatory or disciplinary action.   Despite extensive coordination between Western allies confronting Russia's aggression against Ukraine, which includes mirroring of sanctions, no jurisdiction in the world – including Ukraine itself – has imposed sanctions on Plaintiffs other than the United States.

**Defendants' Sanctioning Authority**

31.     The general policy and purpose of the IEEPA is to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President of the United States declares a national emergency with respect to such threat.  50 U.S.C. § 1701(a).  Executive Orders can provide detailed instructions to federal agencies on how to implement and enforce the measures authorized under IEEPA. They may specify the procedures for license applications, reporting requirements, and enforcement mechanisms.  Without specific instructions in enabling

Executive Orders, Defendant OFAC lacks the statutory authority to impose sanctions or designate individuals and entities to the SDN List.

32.     On April 15, 2021, President Biden issued Executive Order 14024 ("E.O. 14024") to address "specified harmful foreign activities of the Government of the Russian Federation." Section 1(a)(i) of E.O. 14024 imposed economic sanctions on "any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, or the Secretary of State, in consultation with the Secretary of the Treasury, to operate or have operated in such sectors of the Russian Federation economy as may be determined by the Secretary of the Treasury, in consultation with the Secretary of State."  Based on that section, then-OFAC Director Andrea Gacki issued a Determination on February 24, 2023 (the "February 24, 2023 Determination"), which stated, "section 1(a)(i) of E.O. 14024 shall apply to the metals and mining sector of the Russian Federation economy. Any person determined, pursuant to section 1(a)(i) of E.O. 14024, to operate or have operated in this sector shall be subject to sanctions pursuant to section 1(a)(i)."

33.     Importantly, however, E.O. 14024 and the February 24, 2023 Determination expose those operating in the metals and mining sector of the Russian Federation economy to sanctions, but they do not prohibit transactions with actors in that space unless such actors have first been designated to the SDN List.  *See* OFAC FAQ 1116 ("a sector determination does not automatically impose sanctions on all persons who operate or have operated in the sector.  Only persons determined pursuant to E.O. 14024 to operate or have operated in the above-identified sector are subject to sanctions.").

34.     For the purposes of the February 24, 2023 Determination, the term "metals and mining sector of the Russian Federation economy" includes any act, process, or industry of extracting, at the surface or underground, ores, coal, precious stones, or any other minerals or geological materials in the Russian Federation, or any act of procuring, processing, manufacturing,

or refining such geological materials, or transporting them to, from, or within the Russian Federation.  *See* OFAC FAQ 1115.  As stated by Defendant OFAC, this is the definition the agency "used to define the same term in the Ukraine/Russia-related Sanctions Regulations (see 31 CFR 589.325)."  *Id*.

35.    Section 589.325 of the Ukraine-Related Sanctions Regulations, 31 CFR Part 589, in turn, states that

> [t]he term metals and mining sector of the Russian Federation economy includes any act, process, or industry of extracting, at the surface or underground, ores, coal, precious stones, or any other minerals or geological materials **in the Russian Federation**, or any act of procuring, processing, manufacturing, or refining such geological materials, or transporting them **to, from, or within the Russian Federation**."

31  C.F.R. § 589.325 (emphasis added).

36.    Further, E.O. 14024 also states that non-U.S. persons who "have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of […] ***any person whose property and interests in property are blocked pursuant to this order***."  E.O. 14024 §1(a)(vi)(B) (emphasis added).

### Defendants' Unlawful Actions Have and Will Continue to Cause Substantial Harm

37.    Defendants' actions and the blocking sanctions by OFAC have caused Plaintiffs substantial harm and already brought about immediate and severe consequences, inflicting grave and irreparable harm upon Plaintiffs and their reputations, disrupting business relationships enjoyed by Plaintiff A. Diegelmann and companies under his ownership and control, and also negatively impacting the employees of those companies by jeopardizing their livelihoods and their families who depend on these companies for their financial well-being.

38.    Since their designation on February 23, 2024, Plaintiffs have had little access to their funds for the operation of their businesses, paying their basic living expenses, or satisfying their

financial obligations.  The blocking sanctions effectively prohibit banks around the world with correspondent institutions in the United States (which is the vast majority of banks in the world) from dealing with Plaintiffs, as doing so could easily trigger derivative designations severing their own ties with the U.S. financial system, with adverse repercussions reverberating far beyond the United States.  All these consequences flow from the improper designation of Plaintiffs as SDNs.

39.    The Diegelmanns are unable to use most of their domestic banking channels in Liechtenstein and what is remaining risks imminent closure by the end of May.  In a part of the world that relies heavily on electronic payments and where some counterparties do not even accept cash, they are forced to only use cash.  This is not only for regular purchases, but basic sustenance expenditures, such as rent and utilities.  They are at serious risk of being evicted from their home and unable to secure new housing.

40.    Relatedly, as a result of OFAC's blocking action, A. Diegelmann's cattle farm in Paraguay is now unable to procure feed for the cattle because providers are concerned that supplying the farm will result in their own designation to the SDN List.  As a result, over 2,500 cattle are in imminent risk of death by starvation, in addition to risks associated with neglect as the farm is forced to lay off its employees that care for the cattle.  To prevent this crisis, Plaintiffs, through counsel, submitted a request for authorization and/or guidance from OFAC to allow providers to supply the farm and/or interpretive guidance with respect to the conditional release of funds for the farm's benefit.  However, upon information and belief, OFAC has an internal policy that the agency will not take action without a clear U.S. nexus.

41.    Plaintiffs are subject to these blocking and entry sanctions indefinitely, to the substantial harm of Plaintiffs.  Defendants imposed these blocking and entry sanctions despite the fact that their allegations against Plaintiffs lack credible evidence or factual support, are impossible as a practical matter, and exceed Defendants' legal authority.

42.     Separately, the continued designation, unless swiftly rescinded, is assured to not only destroy the family businesses, but place the fate of hundreds of millions of dollars of assets held in Liechtenstein for the benefit of innocent customers in jeopardy. As an example, A. Diegelmann's company OZL, which operates a secured vault in Liechtenstein, has been informed by its insurer that it will cancel coverage for the protection of the vault at the end of May 2024. Without this insurance, hundreds of millions of dollars in precious metals and other valuables stored in the vault run the risk of theft and/or destruction without any coverage.  If this were to happen, these parties could not even seek reasonable redress because Plaintiffs' assets are generally blocked, precluding the option of attachment of assets.

### Defendants' Conclusory Allegations Are
### Counterfactual and Unsupported by Credible Evidence

43.     Defendants' designations of Plaintiffs are counterfactual and thus not supported by credible evidence.  In some cases, Defendants' allegations reveal a stunning ignorance of the gold trading industry, both in terms of what is practically feasible and the regulatory environment in which the industry operates.

44.     OFAC's Press Release announcing the sanctions states that Plaintiffs "collaborated with Russia-based metals companies to disguise the origin of Russian precious metals."  As an initial matter, Plaintiffs categorically deny any transactions with Russian companies operating in the metals and mining sector of the Russian Federation economy.  Plaintiffs' only transactions involving precious metals originating from Russia occurred in 2021 – prior to the imposition of sanctions on the Russian metals and mining sector – and was limited to the receipt of Russian silver from a client for storage purposes.

45.     Plaintiffs' only interaction with a company involved in the metals and mining sector of the Russian Federation economy was with International Company JSC Highland Gold ("Highland Gold"), a Russian-based gold mining company that was designated to the SDN List on December

12, 2023.  The interaction with Highland Gold was limited to preliminary discussions regarding constructing a vault in Oman, a venture that never proceeded past the discussion phase, and did not result in any executed contracts or completed transactions.

46.     Separately, this allegation displays an ignorance of how the international gold trade operates.  In order to "disguise" the origin of Russian gold, one would have to have access to refining equipment that Plaintiffs do not have access to nor have any means of procuring.  Further, gold bars come in various sizes and shapes, ranging from small bars weighing a few grams to large bars weighing several kilograms and the manufacturing process involves melting the refined gold and pouring it into molds to form bars of the desired size and weight. These bars are then stamped with markings indicating the purity, weight, and the name of the issuing refinery.  As a result, the only way to "disguise" the origin of Russian gold is to alter the stamps on the bars themselves, a process which Plaintiffs do not have the capacity to do in their facilities.

47.     Moreover, even if Plaintiffs had the capacity to "disguise" the origin of Russian gold, there are industry reasons why it would be futile to do so.  As an initial matter, the gold industry is subject to various regulations and standards governing the production, certification, and sale of gold bars.  As with the trading of all valuable metals, the sale of gold comes with significant documentation and certification, all of which is designed to prevent the "disguise" of a precious metal's origin.  Further, manufacturers and refiners of gold take significant measures to prevent tampering and ensure the integrity of their stamps, including employing sophisticated security features and techniques to make it difficult to alter or counterfeit stamps on gold bars. These may include holograms, microprinting, special inks, or embossing techniques that are challenging to replicate.  Many gold bars are serialized, meaning they have a unique serial number stamped on them. This allows for traceability throughout the supply chain, making it more difficult to alter stamps without raising suspicions. Any discrepancies or irregularities in the stamps or serial

numbers would likely be detected during inspections or audits. Furthermore, purchasers of gold regularly verify these indicators before completing any purchase, meaning that, as a practical matter, the precious metals industry is well-versed and sophisticated in identifying gold that has been altered or counterfeit or that may be originating from somewhere other than its true source.

48.     Furthermore, manufacturers and refiners in the gold industry rely on their reputation and trustworthiness to maintain business relationships with customers and partners. Any actor in the space found to be deliberately altering stamps on gold bars to deceive customers would severely damage their reputation, and it would almost certainly be catastrophic for their business.

49.     OFAC's press release also states that "Axel, Fritz, and Rheingold Edelmetall AG also assisted Russian clients to launder funds by buying and selling precious metals for cash, illicitly circumventing international sanctions" and "Rheingold Edelmetall AG took steps to obfuscate the ownership of Russian clients and the beneficiaries of these transactions." Both of these allegations are untrue and ignore the fact that Plaintiffs operate in a heavily regulated sector that is subject to stringent oversight designed to detect and deter the type of conduct described in the allegations.

50.     Plaintiffs do not deny that they purchase precious metals on behalf of their clients. Indeed, that is the purpose of their business. However, there is simply no basis to believe the conclusory allegations that Plaintiffs are engaged in "money laundering" or "illicitly circumventing international sanctions." Plaintiffs operate in a sector that is fully regulated, with a particular emphasis on deterring money laundering. Plaintiffs' operations occur under the auspices of a rigid compliance program with name screening and are subject to third party audit by the local financial market authority. Additionally, the financial records of Rheingold Edelmetall AG are externally audited by a leading international accounting firm.

51.     Furthermore, Rheingold Edelmetall AG and Liemeta AG are subject to the Liechtenstein Due Diligence Act ("DDA"), which requires the company to identify and verify the

identity of the contracting party, the beneficial owner, to establish a business profile, monitor business relationships according to the risk assessment and notify local officials if it suspects money laundering or any predicate offense to money laundering.  Rheingold must document its compliance with these due diligence requirements and maintain documents and records for at least 10 years from the end of the business relationship.

52.     Rheingold is regulated by the Liechtenstein Financial Market Authority, which carries out ordinary inspections by auditors or auditing companies on a periodic basis with respect to compliance with the DDA.

53.     Rheingold and OZL also have internal guidance requirements. Every year, the Due Diligence officer must create a report on how the standards for compliance were achieved. Additionally, an internal investigator officer must check and review the Due Diligence Officer's report and take Know Your Customer ("KYC") samples from clients and review them and eventually file a report. Lastly, this officer also creates a Business Risk Assessment and a client risk assessment report for the whole company.  This is in addition to standard annual financial audits by a globally recognized accounting firm.

54.     Further, through methods such as assays, refining, and stamps, watermarks, and QR codes, the origin of gold can be readily ascertainable and confirmed by a potential buyer.  This makes the sale of undocumented gold nearly impossible, impractical, and outside of industry custom.

55.     OFAC's final allegation is that "German national Bernd Guenter Diegelmann (Bernd), a UAE-based employee of Rheingold Edelmetall AG, arranged the sale of Russian precious stones in the UAE."  However, Bernd Diegelmann is not an employee of Rheingold Edelmetall AG, nor have any of his activities in the UAE been directed by or performed on behalf of Plaintiffs.  As such, Plaintiffs' designation based on any of Bernd Diegelmann's activities, even

if true, amounts to guilt by association based on familial relation rather than any legitimate or legal basis.

**Defendants' Allegations Are Legally Flawed and
Do Not Validly Support Plaintiffs' Designation**

56.     However, even if Defendants' allegations were true – and they are not – none of them constitute "operating in the metals and mining sector of the Russian Federation economy." Section 1(a)(i) of E.O. 14024 imposes economic sanctions on "any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, or the Secretary of State, in consultation with the Secretary of the Treasury, to operate or have operated in such sectors of the Russian Federation economy as may be determined by the Secretary of the Treasury, in consultation with the Secretary of State."

57.     Based on that section, then-OFAC Director Andrea Gacki issued the February 24, 2023 Determination, which stated, "section 1(a)(i) of E.O. 14024 shall apply to the metals and mining sector of the Russian Federation economy. Any person determined, pursuant to section 1(a)(i) of E.O. 14024, to operate or have operated in this sector shall be subject to sanctions pursuant to section 1(a)(i)."  Importantly, however, E.O. 14024 and the February 24, 2023 Determination expose those operating in the metals and mining sector of the Russian Federation economy to sanctions, but they do not prohibit transactions with actors in that space unless those actors have been specifically designated.  *See* OFAC FAQ 1116 ("a sector determination does not automatically impose sanctions on all persons who operate or have operated in the sector.  Only persons determined pursuant to E.O. 14024 to operate or have operated in the above-identified sector are subject to sanctions.").

58.     For the purposes of the February 24, 2023 Determination, the term "metals and mining sector of the Russian Federation economy" includes any act, process, or industry of

extracting, at the surface or underground, ores, coal, precious stones, or any other minerals or geological materials in the Russian Federation, or any act of procuring, processing, manufacturing, or refining such geological materials, or transporting them to, from, or within the Russian Federation.  *See* OFAC FAQ 1115.  As stated by Defendant OFAC, this is the definition the agency "used to define the same term in the Ukraine/Russia-related Sanctions Regulations (see 31 CFR 589.325)."  *Id.*

59.    Section 589.325 of the Ukraine-Related Sanctions Regulations, 31 CFR Part 589, in turn, states that

> [t]he term metals and mining sector of the Russian Federation economy includes any act, process, or industry of extracting, at the surface or underground, ores, coal, precious stones, or any other minerals or geological materials ***in the Russian Federation***, or any act of procuring, processing, manufacturing, or refining such geological materials, or transporting them ***to, from, or within the Russian Federation***."

31 C.F.R. § 589.325 (emphasis added).

58.    Even assuming OFAC's allegations were true – which, again, Plaintiffs vehemently deny that they are not – none would constitute "operating in the metals and mining sector of the Russian Federation economy" as that term has been clearly defined.  There is no basis to assert that the alleged activity involved the extraction of gold from inside of Russia or "procuring, processing, manufacturing, or refining such geological materials, or transporting them to, from, or within the Russian Federation."

59.    Separately, E.O. 14024 does not authorize the designation of individuals and entities for merely selling gold to non-sanctioned Russians persons or storing gold for such persons.  This position is supported by OFAC's FAQ 1029, which states, in relevant part:

> Gold-related transactions involving the Russian Federation ***may be sanctionable*** under E.O. 14024 or other Russia-related sanctions authorities.  For example, E.O. 14024 authorizes sanctions against:

Persons determined to be responsible for or complicit in, or to have directly or indirectly engaged or attempted to engage in, deceptive or structured transactions or dealings *to circumvent U.S. sanctions*, including through the use of assets such as gold or other precious metals;

Persons determined *to operate or to have operated in the financial services sector of the Russian Federation economy*, which could include those engaging in gold-related transactions involving the Russian Federation; and

Persons that have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or *in support of, persons blocked under E.O. 14024*. This could include transactions in gold or other precious metals *that involve such blocked persons*.

*See* OFAC FAQ 1029 (emphasis added).

60.     By stating that gold-related transactions involving the Russian Federation "may be sanctionable," Defendant OFAC concedes that not all gold-related transactions involving gold of Russian origin are prohibited or in violation of U.S. sanctions. Indeed, OFAC FAQ 1029 details conduct that would be sanctionable for separate reasons, including circumvention of U.S. sanctions, operating in other sanctioned sectors, or providing material assistance to those on the SDN List. However, none of Defendant OFAC's allegations touch on any of the above-described activity. There is no allegation that Plaintiffs operated in the financial services sector of the Russian Federation economy, nor is there any allegation that any "Russian-based metals companies" that Plaintiffs allegedly collaborated with were blocked or sanctioned. And even if the "disguise" of the source of Russian gold were practically feasible, there is no allegation that it was done to evade U.S. sanctions. Indeed, Plaintiffs have very few touchpoints with the United States. None of their clients are U.S. citizens, and only three of its clients are U.S. residents, all of whom are merely depositors with Plaintiffs. And, tellingly, Defendants' allegation accuses Plaintiffs of circumventing "international sanctions," not U.S. sanctions.

61.     Further, there is no indication that any of the "Russian clients" mentioned in the second and third allegations were sanctioned – indeed, the Plaintiffs' client lists do not reflect that

any are sanctioned – meaning that Plaintiffs could not be derivatively sanctioned for providing material assistance to a designated person or entity.  Rather, the allegation seems to be based on the premise that if the Plaintiffs purchased gold on behalf of a non-sanctioned Russian person, then this would constitute "money laundering" or an evasion of U.S. sanctions.  Simply put, that is not the law.

62.     Specifically, while E.O. 14024 authorizes derivative sanctions, it does so only in the context of material support to an individual or entity already sanctioned by the U.S.:

> (1) any person determined by the Secretary of the Treasury […]
>
> > […]
>
> (vi)     to have ***materially assisted***, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of:
>
> > […]
>
> (B)     ***any person whose property and interests in property are blocked pursuant to this order***[.]

E.O. 14024 §1(a)(vi)(B) (emphasis added).

64.     As a result, E.O. 14024 does not grant Defendant OFAC the authority to sanction an individual or an entity for providing material assistance to a sector of the Russian Federation economy, even if that sector has been sanctioned as a whole.  *See, e.g.*, OFAC FAQs 980, 1116 ("a sector determination does not automatically impose sanctions on all persons who operate or have operated in the sector.  Only persons determined pursuant to E.O. 14024 to operate or have operated in the above-identified sector are subject to sanctions.").

63.     Defendants' final allegation – that Bernd Diegelmann "arranged for the sale" of Russian precious stones in the UAE – is likewise legally flawed.  Even if Bernd Diegelmann was acting at Plaintiffs' direction – which he was not – there is no allegation that Bernd of Plaintiffs was involved it the extraction of the alleged "Russian precious stones" or their transport from

Russia, nor is there any allegation that they were sold to circumvent U.S. sanctions or on behalf of sanctioned individuals.  Accordingly, for the same reasons set forth above, Defendants' allegation, even if true, would not be a legally proper basis for designation.

### CAUSES OF ACTION

### COUNT I
### DEFENDANTS HAVE EXCEEDED THEIR STATUTORY
### AND CONSTITUTIONAL AUTHORITY

64.     Paragraphs 1 through 63 are re-alleged and incorporated by reference as though fully set forth herein.

65.     Under the Administrative Procedure Act, 5 U.S.C. § 551 et seq. ("<u>APA</u>"), "the reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

66.     In order for OFAC to impose sanctions on an person or entity for "operating within the metals and mining sector of the Russian Federation economy," there must be reason to believe that the person or entity has engaged in "any act, process, or industry of extracting, at the surface or underground, ores, coal, precious stones, or any other minerals or geological materials in the Russian Federation, or any act of procuring, processing, manufacturing, or refining such geological materials, or transporting them to, from, or within the Russian Federation."  31 C.F.R. § 589.325.

67.     Defendants' imposition of blocking sanctions on Plaintiffs was not in accordance with law because there has been no allegation that Plaintiffs engaged in any act of extraction of any precious metals in the Russian Federation or any act of procurement, processing, manufacturing or refining of precious metals or transporting such materials to, from or within the Russian Federation.

68.     The Court should therefore hold unlawful and set aside the Defendants' designation of Plaintiffs as SDNs, their inclusion on the SDN List, and the imposition of blocking sanctions upon Plaintiffs.

### COUNT II
### DEFENDANTS' DESIGNATION OF PLAINTIFFS WAS ARBITRARY AND CAPRICIOUS IN THAT IT WAS NOT BASED ON CREDIBLE EVIDENCE

69.     Paragraphs 1 through 63 are re-alleged and incorporated by reference as though fully set forth herein.

70.     Under the APA, agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), and agency action found to be without observance of procedure required by law, 5 U.S.C. § 706(2)(D), shall be held unlawful by a reviewing court and set aside.

71.     Defendants' imposition of sanctions on Plaintiffs was based on conclusory allegations, failed to identify any credible evidence, was contrary to fact, and is, therefore, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

72.     The Court should therefore hold unlawful and set aside the Defendants' designation of Plaintiffs as SDNs, their inclusion on the SDN List, and the imposition of blocking sanctions upon Plaintiffs.

### REQUEST FOR RELIEF

Wherefore, Plaintiffs request the Court to provide the following relief:

1.     Declare unlawful and set aside Defendants' designation of Plaintiffs as SDNs and their placement on the SDN List and direct the removal of the designation of Plaintiffs as SDNs and of their placement on the SDN List by a writ of mandamus compelling the same.

2.      Declare unlawful and set aside Defendants' imposition of sanctions on Plaintiffs and direct the lifting of all sanctions and direct the lifting of all sanctions by a writ of mandamus compelling the same.

3.      Permanently enjoin Defendants from imposing sanctions against Plaintiffs of the type and nature and based on the allegations made against Plaintiffs by Defendants in this case.

4.      Enter judgment in Plaintiffs' favor on all counts.

5.      Award Plaintiffs their attorneys' fees and costs pursuant to 28 U.S.C. § 2412 or other appropriate authority.

6.      Any other such relief as the Court deems just and proper.

Dated: April 16, 2024

Respectfully submitted,

By: /s/ _____
Amir Toossi
Akrivis Law Group, PLLC
747 Third Avenue, 32nd Floor
New York, NY 10022
atoossi@akrivislaw.com
(347) 949-0548

Farhad Alavi
Akrivis Law Group, PLLC
5335 Wisconsin Avenue NW
Suite 440
Washington, DC 20015
falavi@akrivislaw.com
(202) 686-4859

*Counsel for Plaintiffs*