### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AXEL DIEGELMANN, _et al._,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 24-1090 (JEB)** |
| **JANET YELLEN, _et al._,** | |
| **Defendants.** | |

### <u>MEMORANDUM OPINION</u>

The United States believes that Plaintiffs Axel and Fritz Diegelmann, as well as several corporate entities they own and control, have operated in the metals and mining sector of the Russian Federation. Pursuant to an executive order deeming such conduct sanctionable, Defendant Office of Foreign Assets Control thus placed them on its Special Designated Nationals and Blocked Persons List in 2024. Displeased with those designations, Plaintiffs initiated this suit against OFAC and its Director, Bradley T. Smith, as well as the Department of the Treasury and its Secretary, Janet Yellen. Plaintiffs contend that the Government acted unlawfully by designating them and that the designations were arbitrary and capricious under the Administrative Procedure Act. They have now filed a Motion for Summary Judgment. Defendants oppose that Motion and have added a Motion to Dismiss Plaintiffs' Complaint or, in the alternative, a Cross-Motion for Summary Judgment. Having conducted an _in camera_ review of the classified administrative record, the Court concludes that OFAC's designations were both lawful and supported by substantial evidence. It thus will grant the Government's Cross-Motion and deny Plaintiffs'.

I.    **Background**

A.  Statutory Scheme

Since our nation's infancy, many of its leaders have viewed economic sanctions as "the most likely means of obtaining our objects without war."  James Madison, "Political Observations," National Archives (Apr. 20, 1795).  In 1977, amidst the Cold War, Congress passed the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 *et seq.*, which grants the President broad discretion to impose economic sanctions on foreign entities and individuals in the event of an "unusual and extraordinary threat."  See Fulmen Co. v. OFAC, 547 F. Supp. 3d 13, 17 (D.D.C. 2020) (citing 50 U.S.C. § 1701).  The President may declare such a national emergency when that threat "originates in substantial part in a foreign state."  Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 159 (D.C. Cir. 2003).

In 2021, invoking IEEPA, President Biden issued Executive Order 14024, "declar[ing] a national emergency to deal with" the threat posed by "harmful foreign activities of the Government of the Russian Federation."  E.O. 14024, 86 Fed. Reg. 20,249, 20,249 (Apr. 19, 2021).  The Order authorizes the Secretary of the Treasury, in consultation with the Secretary of State, to formally designate persons determined "to operate or have operated in . . . any . . . sector of the Russian Federation economy" in order to "block[]" those persons' "property and interests in property" in the United States.  See id., § 1(a)(i).

The Executive Order also authorizes the Secretary of the Treasury to "take such actions, including the promulgation of rules and regulations[,] . . . as may be necessary to carry out the purposes of [Executive Order 14024]."  Id. at 20,252, § 8.  The Secretary has delegated that implementation authority to OFAC.  See 31 C.F.R. § 587.802.  Using that authority, OFAC determined in February 2023 "that section 1(a)(i) of E.O. 14024 shall apply to the metals and

mining sector of the Russian Federation economy."  Off. of Foreign Assets Control,

Determination Pursuant to Section 1(a)(i) of Executive Order 14024 (Feb. 24, 2023),

https://perma.cc/F37A-QS5P.  As a result, "[a]ny person determined . . . to operate or have

operated in this sector shall be subject to sanctions pursuant to section (1)(a)(i)."  Id.

        When OFAC designates persons under executive orders like Executive Order 14024,

they are added to the Specially Designated Nationals and Blocked Persons List (SDN List), and

"all their assets in the United States or under the control of any person who is in the United

States are 'blocked,' or effectively frozen."  Zevallos v. Obama, 793 F.3d 106, 110 (D.C. Cir.

2015) (cleaned up).  A designee then may seek "administrative reconsideration" of his

designation and request to be removed.  See 31 C.F.R. § 501.807.  "A request for reconsideration

— also sometimes called a delisting request — may include arguments or evidence rebutting

Treasury's 'basis . . . for the designation.'"  Zevallos, 793 F.3d at 110 (quoting 31 C.F.R.

§ 501.807).  OFAC reviews these requests and then "provide[s] a written decision" to the

blocked person.  31 C.F.R. § 501.807(b)(3).  "A designated person can request delisting as many

times as he likes."  Zevallos, 793 F.3d at 110.  Beyond this administrative process, a designee

may pursue several opportunities for judicial review.  Generally, "[i]f OFAC denies a request for

reconsideration, the blocked person may challenge that determination under the APA" in federal

court.  See Sulemane v. Mnuchin, 2019 WL 77428, at *2 (D.D.C. Jan. 2, 2019) (citing caselaw).

In some instances, however, parties challenge the agency's designation in court while the

administrative process is pending.  See, e.g., Fares v. Smith, 901 F.3d 315, 317, 320 (D.C. Cir.

2018); Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury, 686 F.3d 965, 974 (9th Cir.

2012); Zevallos, 793 F.3d at 111.

B.  Factual Background

Plaintiffs are Axel Diegelmann, his son Fritz Diegelmann, and three corporate entities they own and control: Rheingold Edelmetall AG, Rheingold Edelmetall GmbH, and Liemeta AG.  See ECF No. 15-1 (Pl. MSJ) at 3–8.  In February 2024, OFAC designated Rheingold Edelmetall AG for operating or having operated in the metals and mining sector of the Russian Federation economy.  See ECF No. 25 (Joint Appendix) at 26.  It designated Axel and Fritz Diegelmann for the same reason and because they were or had been leaders, officials, senior executive officers, or members of the board of directors of Rheingold Edelmetall AG.  See id. at 3.  OFAC also designated Rheingold Edelmetall GmbH and Liemeta AG for being owned or controlled by, or having acted or purported to act for or on behalf of, directly or indirectly, Rheingold Edelmetall AG and Axel Diegelmann, respectively.  See id. at 26.

In its press release announcing those designations, OFAC explained that Plaintiffs "collaborated with Russia-based metals companies to disguise the origin of Russian precious metals"; "assisted Russian clients to launder funds by buying and selling precious metals for cash, illicitly circumventing international sanctions"; and "took steps to obfuscate the ownership of Russian clients and the beneficiaries of these transactions."  Id. at 86.  Finally, the Government stated that Bernd Diegelmann — Axel's other son, who was then an employee of Rheingold Edelmetall AG —  "arranged the sale of Russian precious stones in the UAE."  Id.

On April 16, 2024, Plaintiffs filed a delisting petition with OFAC, initiating an administrative process that appears to be ongoing.  See Pl. MSJ at 9.  The same day, they filed their Complaint in this court.  Count I asserts that Defendants lack the authority under 31 C.F.R. § 589.325 to designate the Diegelmanns and their associated entities.  See ECF No. 1 (Compl.),

¶¶ 64–68.  Count II challenges the designations as arbitrary and capricious under the APA.  See id., ¶¶ 69–72.

Plaintiffs have filed a Motion for Summary Judgment, while Defendants have filed an Opposition and Motion to Dismiss Plaintiffs' Complaint or, in the alternative, a Cross-Motion for Summary Judgment.  See ECF No. 19 (Def. MSJ).  The Government has provided Plaintiffs with the administrative record underlying its designations, though with all classified and privileged information redacted.  See Pl. MSJ at 10–11.  To better understand that record, the Court ordered the Government to submit that redacted material for in camera review.  See ECF No. 23 (Notice of Classified Lodging).  Having now completed that review, the Court is prepared to address the Motions.

## II.    Legal Standard

Although styled as Cross-Motions for Summary Judgment, the submissions in this case seek the Court's review of an administrative decision.  The summary-judgment standard set forth in Rule 56, therefore, does not apply to the APA count because of the limited role of a court in reviewing the administrative record.  See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89–90 (D.D.C. 2006).  "[W]hen a party seeks review of agency action under the APA, . . . the district judge sits as an appellate tribunal."  Rempfer v. Sharfstein, 583 F.3d 860, 865 (D.C. Cir. 2009) (quotation marks and citation omitted).  The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness."  FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009).  It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

### III.     Analysis

The Government defends its decision to designate Plaintiffs as both lawful and supported by substantial evidence.  The Court will first assess OFAC's legal authority to designate them before turning to the evidentiary basis for those designations.

### A.     Lawfulness of Designations

####     1.     *"Procuring"*

The parties first dispute whether OFAC could lawfully designate Plaintiffs for operating in the Russian metals and mining sector, which is defined as "any act, process, or industry of extracting, at the surface or underground, ores, coal, precious stones, or any other minerals or geological materials in the Russian Federation, or any act of procuring, processing, manufacturing, or refining such geological materials, or transporting them to, from, or within the Russian Federation."  31 C.F.R. § 589.325.  The parties' disagreement largely turns on the meaning of the word "procuring."  According to Plaintiffs, because they merely purchased and sold precious metals on behalf of Russian clients, they should not have been considered to have "procured" those metals.  See ECF No. 21 (Pl. Reply) at 3–13.  The Government rejoins that "procuring" precious metals includes buying and selling them and thus encompasses Plaintiffs' activity.  See ECF No. 22 (Def. Reply) at 1–5.

As an initial matter, the parties debate whether and to what extent OFAC's interpretation of 31 C.F.R. § 589.325 is owed deference.  Plaintiffs contend that the Supreme Court's recent decision in Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024) — which held that courts should not defer to agencies' interpretations of statutes — ushered in a brave new world and mandates that courts should also no longer defer to agencies' interpretations of their own regulations (commonly known as Auer deference).  See ECF No. 26 (Pl. Surreply) at 1–3.

Defendants, on the other hand, insist that Loper Bright, significant as it may be, did not cast doubt on Auer deference.  See ECF No. 22 (Def. Reply) at 3–4.  Because the Court determines that the Government's reading of "procuring" is the best one, however, it need not resort to any deference regime.  It therefore leaves for wiser minds the question of Auer's continued validity.

To begin, neither OFAC's determination nor Executive Order 14024's implementing regulations set out what "procuring" prohibited materials entails.  The Government urges the Court to give the word "procure" its ordinary meaning — that is, "to get possession of (something): to obtain (something) by particular care and effort."  Def. MSJ at 13–14 (quoting Procure, Merriam-Webster Dictionary); accord Procure, Black's Law Dictionary (11th ed. 2019) ("To obtain (something), esp. by special effort or means"); see also Charles Dickens, A Christmas Carol 21 (1858) (Marley's Ghost: "I am here to-night to warn you, that you have yet a chance and hope of escaping my fate.  A chance and hope of my procuring, Ebenezer.").  For their part, Plaintiffs do not dispute that the Government's definition of "procuring" is the ordinary one.  They instead insist that, in the context of OFAC's determination that Executive Order 14024 should apply to the metals and mining sector, the word "procuring" should be considered a term of art with a meaning specific to that sector.  See Pl. Reply at 4–6.  In particular, Plaintiffs believe that "procuring" should include only "the obtaining of materials and supplies necessary for extraction of geological materials" — not "buying and selling."  Id. at 5 (citing industry publications).

To succeed on that argument, Plaintiffs must first dig themselves out of a big hole.  As the Supreme Court has noted, "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."  Perrin v. United States, 444 U.S. 37, 42 (1979); accord Mac's Shell Serv. v. Shell Oil

Prods. Co. LLC, 559 U.S. 175, 182–83 (2010).  Moreover, "unless it is obvious that [a term was] intended to be used in [its] technical connotation, [it] will be given the meaning that common speech imports."  Stinson v. N.Y. Life Ins. Co., 167 F.2d 233, 235 (D.C. Cir. 1948).  "[W]e do not assume that a . . . word is used as a term of art"; rather, "context determines meaning." Johnson v. United States, 559 U.S. 133, 139 (2010).  There is therefore a strong presumption that "procuring" should be understood in this context to mean the same thing that it means in most other contexts.  Plaintiffs resist that presumption, instead contending that the "industry definition of 'procuring' is the only rational one that can be applied in the context it was used."  Pl. Reply at 6.  Because OFAC's determination was "entirely geared towards the metals and mining sector," Plaintiffs maintain, its language must be interpreted in the narrow context of that industry.  Id.

    While OFAC's determination and the associated regulation are indeed concerned with the metals and mining sector, the subject matter alone does not make it "obvious," Stinson, 167 F.2d at 235, that the word "procuring" must be cabined to its industry-specific meaning.  Many statutes and regulations likewise focus on a specific sector; such a focus does not deem each word an industry term of art.  Indeed, Plaintiffs do not argue for an industry-specific definition of any other verbs in the relevant clause.  What is more, their suggested interpretation makes little grammatical sense when viewed alongside the rest of the regulation, which provides that operating in the Russian metals and mining sector includes "any act of procuring, processing, manufacturing, or refining . . . geological materials [in the Russian Federation]."  31 C.F.R. § 589.325.  The object of the verb "procuring" is "geological materials"; in other words, the regulation encompasses the act of "procuring . . . geological materials."  Plaintiffs believe that phrase actually means "the obtaining of materials and supplies necessary for extraction of

geological materials." <u>See</u> Pl. Reply at 5.  Viewed this way, "procuring" forbids only the initial step of obtaining the necessary items to access the geological materials.  Under Plaintiffs' reading, in fact, the regulation would presumably never capture those who actually obtain the geological materials themselves.

The Court is unpersuaded that the regulation's drafters intended this interpretation.  Even if "procuring" is widely understood in the metals and mining industry to have a narrow meaning, "procuring . . . geological materials" would be a most unnatural way to describe acquiring only the predicate tools for obtaining geological materials.  Because the regulation does not clearly indicate that "procuring" should be so understood, and "we 'do not force term-of-art definitions into contexts where they plainly do not fit,'" <u>Johnson</u>, 559 U.S. at 139–40 (quoting <u>Gonzales v. Oregon</u>, 546 U.S. 243, 282 (2006) (Scalia, J., dissenting)), the Court agrees with the Government that Plaintiffs' proposed definition is mere fool's gold.  In the context of evaluating whether a person has operated in the Russian metals and mining industry, the word "procuring" should take its ordinary meaning: obtaining something, especially through particular effort.

### 2. *Scope*

Plaintiffs next object to the chronological scope of OFAC's determination.  Recall that "[a]ny person determined . . . to operate or have operated in [the metals and mining sector of the Russian Federation economy] shall be subject to sanctions."  Off. of Foreign Assets Control, <u>Determination Pursuant to Section 1(a)(i) of Executive Order 14024</u>.  The first portion of the sentence — "[a]ny person determined . . . to operate or have operated" — includes anyone who has engaged in the relevant conduct <u>at any time</u>.  Although Plaintiffs resist the notion that a party could be subject to designation for activity that occurred prior to the Russian invasion of

Ukraine, see Pl. Reply at 9, OFAC's use of the phrase "have operated" makes clear that there is no time limit on sanctionable conduct.

Equipped with this understanding, the Court addresses whether the Government could lawfully designate Plaintiffs based on their alleged conduct. According to OFAC, Plaintiffs "collaborated with Russia-based metals companies to disguise the origin of Russian precious metals"; "assisted Russian clients to launder funds by buying and selling precious metals for cash, illicitly circumventing international sanctions"; and "took steps to obfuscate the ownership of Russian clients and the beneficiaries of these transactions." Joint Appendix at 86. That is, Plaintiffs assisted in the purchase and sale of Russian precious metals, and they bought and sold precious metals on behalf of Russian clients. It is clear, then, that such conduct properly lands Plaintiffs within OFAC's designation.

Hoping to find a diamond in the rough, Plaintiffs point to two statements from OFAC that they believe demonstrate that the agency itself has a narrower conception of its designation authority. See Pl. Reply at 6–9. In one — FAQ 1070 — OFAC explained that "the importation into the United States of gold of Russian Federation origin that was located outside of the Russian Federation prior to June 28, 2022 is not prohibited." Off. of Foreign Assets Control, 1070. What Does the Gold-Related Determination Pursuant to Executive Order (E.O.) 14068 Prohibit? (Dec. 22, 2023), https://perma.cc/4CA4-EKR7. Plaintiffs, however, ignore that FAQ 1070 refers not only to a different OFAC determination but a different executive order altogether. FAQ 1070 therefore has no bearing on OFAC's authority in this case.

In the other statement — FAQ 1029 — OFAC made the uncontroversial statement that "[g]old-related transactions involving the Russian Federation may be sanctionable under E.O. 14024" and that designations could be made against, for example, persons determined to have

circumvented U.S. sanctions.  See Off. of Foreign Assets Control, 1029. How Do the Prohibitions of Executive Order (E.O.) 14024 and Other Russia-Related Sanctions Impact Gold-Related Transactions or Persons Participating in the Gold Market? (June 28, 2022), https://perma.cc/23DQ-55M7.  According to Plaintiffs, FAQ 1029 "makes clear that the agency did not view merely purchasing gold from inside of Russia as per se sanctionable activity."  Pl. Reply at 7.  While FAQ 1029 does concern the correct executive order, it stands for the obvious proposition that persons can be sanctioned for participating in the Russian gold market, particularly if they do so by circumventing American sanctions.  Because that is precisely the activity OFAC accuses Plaintiffs of conducting, FAQ 1029 is entirely consistent with these designations.

Plaintiffs lament the extremely broad reach of OFAC's interpretation.  As they point out, "Under Defendants' definition, any person or entity that had ever purchased any geological material, precious metal or otherwise, from Russia would be subject to sanctions, even if such purchase occurred prior to the Russian invasion of Ukraine."  Pl. Reply at 9.  However valid this concern, the broad language in OFAC's determination, as well as 31 C.F.R. § 589.325, must lead to the conclusion that a wide range of conduct is sanctionable under Executive Order 14024. Although the Government's sanctioning authority is certainly extensive, it is not "absurd."  Pl. Reply at 3, 9.  The Government sensibly explains why its concerns with Russian foreign activities stretch far beyond the invasion of Ukraine.  For example, it notes Russian efforts to undermine democratic elections and institutions, engage in malicious cyber activities against the United States and its allies, and use transnational corruption to influence foreign governments. See E.O. 14024, 86 Fed. Reg. at 20,249, § 1(a)(i).  The magnitude of the Government's

authority, then, does not disturb the Court's conclusion that the broad reading of the relevant law is the correct one.

The Court, moreover, is comforted by the possibility that an individual designation — even if consistent with the Government's legal authority — can still be challenged as arbitrary and capricious under the APA.  Cf. Animal Legal Def. Fund, Inc. v. Perdue, 872 F.3d 602, 619 (D.C. Cir. 2017) ("Agency action may be consistent with the agency's authorizing statute and yet arbitrary and capricious under the APA.  The court's inquiry on the latter point depends not solely on the agency's legal authority, but instead on the agency's ability to demonstrate that it engaged in reasoned decisionmaking.  The mere fact that a regulatory scheme is generally consistent with the agency's authorizing statute does not shield each agency action taken under the scheme from arbitrary and capricious review.") (citations omitted).  In other words, if there is no reason whatsoever to think a particular designation would advance the national interest, the designee could challenge the action as arbitrary and capricious even if it were technically sanctioned by law.

In any event, the Court agrees with the Government that OFAC could lawfully designate Plaintiffs for operating in the Russian metals and mining sector.  The Court will therefore grant summary judgment to Defendants on Count I.

B.  Substantial Evidence

Hoping that the arbitrary-and-capricious caveat just laid out is their silver bullet, Plaintiffs also allege that Defendants' designations were unsupported by substantial evidence in violation of the APA.  See Compl., ¶¶ 69–72; Pl. MSJ at 26–30.  Specifically, they contend that there is no evidence that they were in fact involved in the Russian metals and mining sector.  See Pl. Reply at 14.

To support its designations, the Government has provided the Court with a classified administrative record.  The D.C. Circuit has made abundantly clear that OFAC may rely on such classified materials when adding a person to the SDN list.  See, e.g., Holy Land Found. for Relief and Dev. v. Ashcroft, 333 F.3d 156, 164 (D.C. Cir. 2003).  Indeed, it is precisely because of the agency's ability to use such materials that "IEEPA expressly authorizes *ex parte* and *in camera* review of classified information in 'any judicial review of a determination made under this section [that] was based on classified information.'"  Id. (alteration in original) (quoting 50 U.S.C. § 1702(c)).  Additionally, the Government is entitled to rely on its own "press release" in making and justifying its designation decisions.  See Fares v. Smith, 249 F. Supp. 3d 115, 125 (D.D.C. 2017), aff'd, 901 F.3d 315 (D.C. Cir 2018).

In conducting its review, the Court may therefore consider the entirety of the administrative record.  It must apply the APA's "'highly deferential standard,' meaning that [it] may set aside Treasury's action 'only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Zevallos, 793 F.3d at 112 (quoting Islamic Am. Relief Agency v. Gonzales, 477 F.3d 728, 732 (D.C. Cir. 2007)).  The Court "may not substitute [its] judgment for OFAC's," but must require only that the agency "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  Id. (alteration omitted) (quoting Islamic Am. Relief Agency, 477 F.3d at 732).  For an OFAC designation, "[t]he APA's substantial evidence standard 'requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence.'"  Epsilon Elecs., Inc. v. U.S. Dep't of Treasury, 857 F.3d 913, 925 (D.C. Cir. 2017) (quoting Town of Barnstable v. FAA, 740 F.3d 681, 687 (D.C. Cir. 2014)).  The D.C. Circuit, moreover, has urged courts to be "extremely deferential" to executive blocking orders, decisions

"at the intersection of national security, foreign policy, and administrative law."  Islamic Am. Relief Agency, 477 F.3d at 734; see also Olivares v. TSA, 819 F.3d 454, 462 (D.C. Cir. 2016) ("[W]e defer to the informed judgment of agency officials whose obligation it is to assess risks to national security.").

Having reviewed all the material upon which OFAC relied, the Court concludes that Defendants did not err in designating Plaintiffs for having operated in the Russian metals and mining sector.  First, the agency compiled substantial unclassified evidence supporting its conclusion that Plaintiffs participated in the sector, including through procuring geological materials for clients in the Russian Federation.  See Joint Appendix at 86 (describing collaboration with Russian metals companies to disguise origin of Russian precious metals); id. (describing role in buying and selling precious metals for cash on behalf of Russian clients); id. (describing sale of Russian precious stones).  Although Plaintiffs take issue with evidence involving the other son Bernd Diegelmann because he is no longer an employee of Rheingold, see Pl. MSJ at 27, the Government has provided evidence that Bernd was an executive member of the company at the time of the relevant conduct.  See Joint Appendix at 86, 117.  Second, the classified record — reviewed by this Court *in camera* — contains further evidence demonstrating that Plaintiffs have operated in the Russian metals and mining sector.  Plaintiffs have provided no basis for the Court to disturb that conclusion other than to rehash their legal arguments and assert, incorrectly, that "based on OFAC's allegations and Plaintiffs' own knowledge of the facts, OFAC's decision to designate Plaintiffs was arbitrary and capricious insofar as it failed to be based on reasoned decision-making."  Pl. MSJ at 30.

Like the Circuit in Islamic American Relief Agency, the Court "acknowledge[s] that the unclassified record evidence is not overwhelming."  477 F.3d at 734.  The Court's "function,

however, is only to search for <u>substantial</u> evidence, not proof positive." <u>Pub. Citizen Health</u>

<u>Rsch. Grp. v. Tyson</u>, 796 F.2d 1479, 1495 (D.C. Cir. 1986).  And in light of the "extremely

deferential" standard in this area, <u>see</u> <u>Islamic Am. Relief Agency</u>, 477 F.3d at 734, the public

record provides substantial evidence for the conclusion that Plaintiffs procured geological

materials and therefore operated in the Russian metals and mining sector — a determination the

classified record confirms.  As a result, the Government's decision is not arbitrary and

capricious, and the Court will grant summary judgment to Defendants on Count II.

The Court, however, emphasizes that Plaintiffs remain free to pursue the administrative-

reconsideration process. As they seem to acknowledge, the delisting process supplies a superior

avenue for them to propose mechanisms or provide additional evidence that would render the

designations unnecessary.  <u>See</u> Pl. MSJ at 9–10; <u>see also</u> <u>Fares</u>, 901 F.3d at 326 (rejecting

challenge to initial designation but "recogniz[ing] that this is not plaintiffs' last or only chance to

contest their designation").

## IV.    Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Summary

Judgment and deny Plaintiffs' Motion.  A separate Order so stating will issue this day.

<u>/s/ James E. Boasberg</u>
JAMES E. BOASBERG
Chief Judge

Date:  <u>November 25, 2024</u>